## DETERMINED IN THE

# COURT OF ERRORS AND APPEALS,

### OF THE

## STATE OF NEW JERSEY

### AT JUNE TERM, 1854.

---

### JACOB APGAR'S ADMINISTRATORS v. PHILIP HILER.

1. Where a note is signed by three persons, and the word "sureties ' is annexed to the names of two, this is *prima facie* evidence among themselves that the two were surety together for the other. But this fact is matter *in pais* and may be explained by parol.

2. When one is surety for several in the same instrument, he may recover from all or either of his principals the amount which he may have been compelled to pay by reason of his suretyship.

3. When one of two sureties becomes such at the request of his co-surety, and upon his promise that he would be put to no loss, he may recover the whole of what he may have been compelled to pay of his co-surety; such promise may be shown by parol, and is not within the statute of frauds.

4. It is no ground of reversal on a writ of error that the verdict of the jury is for a larger sum than it should be; the remedy for this is by a new trial.

5. A surety may recover of his principal the costs which he has been compelled to pay in an action brought to recover of him the amount for which he was surety.

This was a writ of error to the Supreme Court to remove the judgment obtained in that court by the defendant in error against the plaintiffs. The suit below was an action of assumpsit. Upon trial before Justice POTTS, in the Hun-

812

terdon circuit in December, 1852. The plaintiff below proved that he, with Jacob Apgar, the intestate of the defendants below, and one Peter R. Fisher, signed a note to Tunis Melick, or order, for seven hundred dollars. Fisher signed the note first, and Apgar and Hiler after him, and opposite their names the word "securities" was written by Apgar. It was proven by Henry Johnson that Apgar solicited, and procured Hiler to sign the note as surety, and that in such solicitation he said, "if you will sign it, it will be a great accommodation *to us*, and you shall never pay one red cent." Apgar and Fisher were partners in business. A suit was brought and a judgment obtained upon the note against all these promissors, and the debt and costs made out of Hiler, the plaintiff below.

The court, among other things, charged the jury as follows:

"Two things appear to be certain—1st, that Apgar prevailed on Hiler to sign the note as security; and second, that he promised, if he would do so, he should be saved harmless; that is, should not have to pay one red cent. If you believe that this assurance was the consideration of the execution of the note by Hiler, it is equivalent to a promise that he would stand between him and loss, and binds Apgar for any money Hiler had to pay on it; for if Apgar, by his sole agency and solicitation, and as a matter of favor to himself, and with an assurance that no loss shall be sustained, procured Hiler to become additional security with himself, he puts himself, as to Hiler, in the situation of a principal; that is, the second security stands in relation to the first security on the same footing as a second endorser, who, if he has to pay the money, may collect it of the first endorser. It therefore follows that, if you believe Johnson's testimony, Apgar's estate is bound to pay the whole of this claim."

To this charge of the court the defendants excepted, and prayed a bill of exceptions.

The verdict was for the plaintiff below, for the whole amount of debt and costs paid by him, with the interest.

The cause was argued by Mr. *Ransom* and Mr. *Whitehead* for the plaintiffs in error, and by Mr. *Wurts* and Mr. *Dayton* for the defendant.

The opinion of the court was delivered by

THE CHIEF JUSTICE. Jacob Apgar, in his life time, and Philip Hiler, the defendant in error, on the fourth of September, 1844, became parties to a promissory note in the following form:

"One year after date, with interest, we, or either of us, promise to pay Tunis Melick, or order, the sum of seven hundred dollars, value received, without defalcation or discount.

(Signed) 　　　　　　　　PETER R. FISHER.

JACOB APGAR, ⎱ Sureties.
PHILIP HILER, ⎰

In August term, 1846, Melick, the payee, recovered judgment in the Hunterdon circuit, against Fisher, Apgar and Hiler, the three makers of the note, for the amount due thereon, with costs. Part of the debt was paid by Fisher. The balance, (amounting, with costs, to five hundred and forty-nine dollars and eighty-eight cents,) was paid by Hiler. To recover the amount thus paid, action was brought.

Upon the trial of the cause it became a material enquiry, in what character, and for what purpose, Hiler became a party to the note. Whether Fisher and Apgar were the principal debtors and Hiler security—or whether Fisher was the principal debtor and Apgar and Hiler joint securities —or for whom, and in what precise character, Hiler became security.

Upon the face of the note, Apgar and Hiler appear as securities, and Fisher as the principal. In the absence of all extrinsic evidence, Apgar and Hiler would be regarded as co-securities, and if the debt were paid by either, he would be entitled as against his co-security to contribution.

But it was clearly competent for the plaintiff to show in what relation the several signers of the note stood to each

other—as to the payee they were all principals, and all bound jointly and severally to pay the debt. But their relation to each other depended not upon the form of the note, nor whether their names were signed first or last to the note, but upon the character in which they became parties to the note, and the agreement or contract made among themselves at the time of signing. This was matter *in pais* proper to be proved by parol. And though the memorandum imports *prima facie* that Apgar and Hiler were joint *securities*, it was competent for the plaintiff to show whether they were securities for Fisher alone, or for each other also; *Kean* v. *Davis*, 1 *Zab.* 683; *Robison* v. *Lyle*, 10 *Barbour* 512.

This the plaintiff on the trial attempted to do. He called a witness, who testified that Hiler signed the note at Apgar's request, that it was Apgar and Fisher's note, that Apgar said it would be a great accommodation *to them*, and that Hiler should never pay one cent. The credibility of the witness was properly submitted to the jury. If the evidence was believed, it showed either that Fisher and Apgar were the principal debtors, and Hiler alone the security; or, if Apgar was security for Fisher, still that Hiler signed, not as joint security with Apgar, and liable with him to contribution—but as security for Apgar also. He stands to Hiler in the relation of principal to a surety. It is clear from the evidence that in any event Apgar was to stand between Hiler and loss.

I. If the jury believed that the note was the debt of Fisher and Apgar, and that Hiler alone was security, he is entitled to recover from his principals the amount paid for their benefit. The action is properly brought against the administrators of Apgar. Whether the original note be joint or several, the liability of the principals to the surety is several. Each is liable for the whole amount.

If the surety is bound for several principals, he is entitled to proceed against each of them for the recovery of the whole of what he has paid. Each of the principals is debtor of the whole of the debt in favor of the creditor; and the

person being surety for each of them has, by paying the debt, liberated each of them from the whole, and consequently has a right to conclude *in solido* against each of them for the reimbursement of the whole of what he has paid, with interest, from the day of his demand. The rule prevails both in the civil and common law; *Burge on Suretyship*, 364; *Duncan* v. *Keiffer*, 3 *Binney* 126; 2 *Greenleaf's Ev.* § 115, *note* 7.

II. If, on the other hand, the jury believed that Fisher alone was the original debtor, and Apgar his security, but that Hiler became security, at Apgar's request, and upon his promise of indemnity, still the plaintiff was entitled to recover in this action.

The evidence was not offered to show an independent contract of guaranty against loss—but simply the character in which Hiler became a party to the note. This, as has been shown, may be proved by parol.

Nor was the evidence offered to prove a promise by Apgar to pay the debt of a third person, and which must therefore be in writing. It was designed to show an original, equitable obligation on the part of Apgar to refund the money, growing out of the circumstances under which Hiler became a party to the instrument, and consequently liable to pay the debt.

In either aspect of the case the charge of the court was right, and if the jury believed the witness, the verdict, so far as this question is concerned, is clearly in accordance with law and equity. Whether the claim had been satisfied by Fisher, the principal debtor, or by Apgar in his life time, and what balance, if any, remained due, were questions peculiarly within the province of the jury, and are in no wise involved within the bills of exceptions. The whole charge of the judge is not before us, and this court cannot assume that he designed, by any casual remark upon this part of the case, to withdraw from the jury the control of questions of fact clearly within their province. The charge, properly considered, admits of no such interpretation.

III. It is insisted that the judgment should be re-

versed, because the plaintiff below recovered not only the original debt and interest, but also the costs of judgment and execution against him. The objection, if well founded, is simply this, that the verdict of the jury is for a larger amount than it ought to have been, which is clearly not the subject of a bill of exceptions.

It is true, that the judge charged the jury, that if they believed the testimony on the part of the plaintiff, the defendant was bound to pay the whole claim, and that this charge was assigned for error. But the controversy before the jury was, whether Apgar was liable for the whole debt, as principal, or merely liable as security to contribution—and the charge of the judge manifestly had reference to that point. The question of liability for costs was not alluded to in the court below, either by court or by counsel—and that it was not referred to in the assignment of errors, is obvious from the printed statement of points designed to be relied on in argument. The objection is there placed upon totally different grounds. . Viewing the matter in this aspect, the alleged error was not within the contemplation of court or counsel. It was not within the bill of exceptions, nor the assignments of errors, nor the points relied on. It was simply an error, in fact, committed by the jury in the amount of their verdict. They were not instructed by the court to allow the costs. If the jury erred, it is no ground of error, and this court can afford no relief.

But admitting that the allowance of costs was within the instructions of the court, and that the matter is properly within the bill of exceptions, there is no error in the charge. The action in which the costs were incurred, was not against the surety alone, but was against him jointly with his principals. The principals were authorised and entitled to defend that suit if they saw fit. The security was not bound to forestal their action by paying the debt. He was justified in permitting the plaintiff to proceed to judgment and execution, in the hope or expectation that the execution would have been satisfied out of their effects. He was guilty of no laches, and cannot be said to have incurred unnecessary costs, which in equity he is bound to pay.

There is no error in the record, and the judgment should be affirmed.

Judgment accordingly.

*For Affirmance*—THE CHANCELLOR, THE CHIEF JUSTICE, and Judges ARROWSMITH, ELMER, HAINES, OGDEN, VALENTINE, WILLS, CORNELISON, HUYLER, and RISLEY—11.

*For Reversal*—None.